## COUNTY OF CHITTENDEN,

##### AT THE

### JANUARY TERM, 1877.

PRESENT:

Hon. HOMER E. ROYCE,
Hon. JONATHAN ROSS,  } Assistant Judges.
Hon. H. HENRY POWERS,

---

## BATES *v.* LECLAIR.

### *Variance.   Estoppel.*

A note payable *on or before* six months from date, was declared upon as payable six months from date. *Held*, no variance.

B. was interested with the plaintiff, his son, in the note in suit, which purported to be signed by defendant as surety for his son; the principal. The testimony tended to show that B., having heard rumors unfavorable to the principal's solvency, went to defendant, told him he held a note against him, and as he signed it as surety, and it was overdue, he thought he would let him know about it; that defendant thereupon looked at the note, and at his name thereon, and said, "It is all right;" that about ten days thereafter, defendant asked B. what interest his (defendant's) son was paying on the note, and was told, and thereupon said that that was better than they could do at the bank; and that thereafter B. supposed "everything was all right," and made no attempt to collect the note, nor to press payment thereof, until about a year and a half afterwards, though the principal continued in business about six months thereafter as before. *Held*, that the testimony tended to show all that was necessary to estop defendant from denying that he signed the note.

ASSUMPSIT. The declaration contained a special count upon a promissory note alleged to be payable six months from the date thereof, and the common counts. Plea, the general issue, with notice that the defendant would, on trial, deny the execution of the note. Trial by jury, April Term, 1876, PIERPOINT, C. J., presiding.

It appeared without dispute, that at the date of the note described in the special count, one Ed. C. Leclair was indebted to the plaintiff and his father, Luther M. Bates, jointly, in a sum equal to or more than the amount of said note, for butter previously sold and delivered by them to him for his own benefit, and on his sole account and credit; and it was conceded that if the defendant was liable at all on said note, he was liable only as surety for the said Ed. C. Leclair, who signed the note as principal. The note was not produced on trial, the plaintiff claiming, and his testimony satisfactorily showing, that it was surrendered to the said Ed. C. Leclair about fifteen months after its date, on t e alivery by him to the plaintiff of another note for the same amount, purporting to have been executed by the said Ed. C. Leclair and the defendant, the signature of the defendant to which was conceded on trial to have been forged. The testimony on the part of the plaintiff tended to show that the note described in the count was delivered to him by the said Ed. C. Leclair at its date, and that the signatures thereto were genuine—the signature of the defendant being followed by the word *surety*. The testimony on the part of the defendant tended to show that his name was not subscribed to said note by himself nor by his authority, but was forged; and that he never knew of the existence of said note until after the commencement of this suit. The plaintiff testified that the note in suit was a joint and several note for $500, dated November 21, 1873, payable on or before six months from date, with interest; and upon this subject there was no other testimony except that of Luther M. Bates, who testified that some time in the fall of 1873, his son and he received from Ed. C. Leclair on account of their claim against him for butter, a joint note signed by himself, and by the defendant as surety, for $500; that he was quite sure the note was given for

six months ; and on being asked whether it did not read " on or before six months ?" said, " I cannot say as it read so.". The witness further testified as follows :

In September, I think, 1874, having heard rumors unfavorable to the solvency of Ed. C. Leclair, I called with the note at his store, and there found him and the defendant.    Stepping up to the defendant, I said, " Mr. Leclair, I hold a little note against you, and as you signed it for surety, and it is past due, I thought I would let you know."    He said, " I never signed any note to you."    " Well," said I, " the note isn't running to me ; it is running to my son."    " That," said he, " is all right."    I held the note in my hand; he reached down and slapped it, and looked at his name, and said, " That is all right."    I then put the note in my pocket, and left for home.    About ten days or two weeks afterwards, I again met the defendant at the same place, and he inquired what interest his son was paying on the note ?    I told him I guessed about eight per cent.    He said that was as well as they could do at the bank.    Ed. C. Leclair continued doing business at his usual place and in the usual way, up to February, 1875, and my son and I dealt with him as before.    And supposing after my conversations with the defendant, that everything was all right, I made no attempt to collect the note or to press payment on it until the following winter, when we heard that Ed. C. Leclair had failed.

There was no other testimony in the case tending to show what was said at these pretended interviews between the said L. M. Bates and the defendant, except that of the defendant, who positively denied that any such interviews ever occurred.

The defendant requested the court to charge, that if the tenor of said note was as testified by the plaintiff, there was a fatal variance between the description of the note in the declaration and the testimony, in respect to the time of payment ; and that the defendant being, at most, but a mere surety, having received no part of the consideration of the note, there could be no recovery against him on the common counts.

But the court instructed the jury that there was no variance ; that recovery could be had under the common counts, provided the genuineness of defendant's signature to the note in suit was established ; and that if the jury found the facts that the testimony of L. M. Bates tended to show concerning his interviews

with the defendant, the defendant would be thereby estopped from denying the genuineness of his signature to the note.

Verdict for plaintiff; exceptions by defendant.

*Wales & Taft* and *E. R Hard*, for defendant.

If the tenor of the note was as described by the plaintiff in his testimony, there was a fatal variance between the note and the description of it in the first count. 1 Smith Lead. Cas. 922–4.

The defendant being only a surety, and having received no part of the consideration of the note, no recovery can legally be had against him on the common counts. *Wells* v. *Girling*, 8 Taunt. 737; *Straton* v. *Rostall*, 2 T. R. (*367); *Page's Admr.* v. *Bank of Alexandria*, 7 Wheat. 35; *Sandford* v. *Norton*, 14 Vt. 228; Chit. Bills, 581.

The charge of the court on the point of estoppel was clearly erroneous. The only testimony introduced upon which the pretense could possibly be made that the defendant was estopped from denying the execution of the note by him, was that of Luther M. Bates; and this is insufficient in several respects, to warrant the court in leaving the question to the jury. 1. The witness did not inform the defendant that his statement or conduct would in any way affect the conduct of the holder of the note; nor was there anything in the circumstances to indicate to the defendant that such would be the effect. 2. There is nothing to show that the defendant intended or expected that his statement would affect the action of the holder of the note in respect to its collection of the other signer. 3. The witness does not say, positively, that any steps would have been taken to collect the note of Ed. C. Leclair if the pretended interview with the defendant had not occurred; and it requires a rather violent inference to gather any such fact from the testimony. 4. It scarcely appears from the testimony that Luther M. Bates gave the defendant such information relative to his connection with the note, as would, under any circumstances, make the defendant's statements binding on him by way of estoppel. Bigelow Estop. 480; *Hackett* v. *Callender*, 32 Vt. 97.

Bates *v.* Leclair.

*R. M. Tyler* and *Henry Ballard*, for plaintiff.

There is not a fatal variance between the description of the note in the declaration and that given by the plaintiff in his evidence. The plaintiff was entitled to recover under the special count, if the jury found the other facts that the court instructed them they must find, to entitle the plaintiff to a verdict. *Crittenden* v. *French*, 21 Ill. 598; *Pouge* v. *Clark*, 25 Ill. 333; *Mooton* v. *Tenney*, 16 Ill. 494; *Hoover* v. *Johnston*, 6 Blachf. 473; *Graham* v. *Fahnestock*, 5 Ib. 215; *Little* v. *Blunt*, 16 Pick. 359; *Templeton* v. *Bascom*, 33 Vt. 132; *Passumpsic Bank* v. *Goss*, 31 Vt. 315; 1 Saund. Pl. & Ev. 456, 1087.

There was no error in the charge of the court as to the effect of the alleged interviews between L. M. Bates and the defendant. If L. M. Bates, who had an equal interest with the plaintiff in said note, called upon the defendant for the purpose of notifying him that the note had not been paid, and the defendant, after examining the note, told him it was all right, and he and the plaintiff, relying upon the statements then made by defendant, neglected to take any measures to secure the claim, and were thereby prevented from securing it against Ed. C. Leclair, then defendant was estopped from afterwards-denying what he had substantially admitted by both word and act. Herman Estop. 340 *et seq.*, and 446, 447, 450; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483; 2 Smith Lead. Cas. 460; *Cummings* v. *Webster*, 43 Me. 192; *Forsyth* v. *Day*, 46 Me. 176; *Cowles* v. *Bacon*, 21 Conn. 451; *Roe* v. *Jerome*, 18 Conn. 138; *Preston* v. *Mann*, 25 Conn. 118; *Simons* v. *Steele*, 36 N. H. 73.

The opinion of the court was delivered by

Ross, J. I. The declaration counts upon a note payable six months from the date thereof. The plaintiff's own testimony tended to show that the note was payable on or before six months from its date. The defendant insisted in the County Court, that if this testimony was believed, there was a legal variance between the note proved and the declaration. It is well settled that in an action upon a contract, the contract must be proved as laid. *Mann and Wheeler* v. *Burchard and Page*, 40 Vt. 326. The

30

declaration need not contain the words of the contract — it is sufficient if it set forth the substance and legal effect of the contract, with precision, certainty, and clearness. In a note payable on or before six months from its date, the maker does not promise to pay until the six months have elapsed. His promise is to pay at the end of six months. He reserves the right, if he so elect, to pay at any time during the six months, but the payee cannot legally enforce payment until the end of the six months. The declaration correctly describes the time when the maker promised to pay the note, but omits to state that he could have paid it sooner if he had so elected. After the six months had passed,. the right of election, reserved to the maker, was gone, and it then remained a note payable in six months from its date. The declaration sets forth the substance and legal effect of the note as it was at the time the suit was brought, and all that was necessary to show a cause of action in the plaintiff. We think this was sufficient, and that there was no such legal variance between the declaration and the proof as would defeat the plaintiff's right of recovery. It was a variance in an immaterial matter which did not touch the plaintiff's right of action, and which need not be stated for the legal identification of the note as the cause of action declared on, if future litigation should arise between the parties in regard to it. *Passumpsic Bank* v. *Ross*, 31 Vt. 315 ; *Mooton* v. *Tenney*, 16 Ill. 494 ; *Hoover* v. *Johnston*, 6 Blackf. (Ind.) 473 ; *Templeton* v. *Bascom*, 33 Vt. 132.

In this view of the case, the determination of whether the plaintiff could recover under the common counts in assumpsit, becomes immaterial.

II. It is not claimed that the County Court did not, in the charge to the jury, correctly state the law appertaining to estoppel, but it is claimed that the testimony did not tend to establish all the points necessary to be established, to make out an estoppel, and hence, that the action of the County Court was erroneous. The only testimony on the subject was that of L. M. Bates. He testified that he was interested in the note with the plaintiff, and, having heard rumors unfavorable to the solvency of Ed. C. Le-

Bates *v.* Leclair.

clair, the other signer of the note, he called at the store with the note, and found the defendant there. Stepping up to him with the note in his hand, he said, "Mr. Leclair, I hold a little note against you, and as you signed it for surety, and it is past due, I thought I would let you know." He said, "I never signed a note to you." Bates then told him the note was running to his son. Leclair then said, "That is all right," reached down and slapped it, looked at his name, and said, "That is all right." Now it is urged that Bates did not inform the defendant that his action would be influenced by the defendant's admission or denial of his signature to the note. The kind and manner of the inquiry were enough to put a man of ordinary prudence on his guard in that respect, and plainly to indicate to him that Bates's action would be influenced by his answer. So, too, it is claimed that Bates did not testify what he should have done if the defendant had denied that he executed the note. But there is a violent presumption that if he had denied its execution, having heard rumors unfavorable to the solvency of the other signer, he would not have rested easy and failed to take any steps for the collection of the note. The language of a witness is to be reasonably considered, and to be weighed, having in mind the known laws and motives which ordinarily govern human conduct. When thus considered and weighed, we think the testimony of L. M. Bates tended to establish all that was necessary to work an estoppel upon a denial of the execution of the note by the defendant. Having this tendency, it was the duty of the County Court to submit the question of estoppel to the jury, with proper instructions.

Judgment affirmed.